

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 20, 2021

**BY ECF**

The Honorable Kimba M. Wood
Southern District of New York
500 Pearl Street Square
New York, New York 10007

  Re: *United States v. Steven Lesane*, S7 18 Cr. 527 (KMW)

Dear Judge Wood:

  The Government submits this letter in advance of the sentencing of Steven Lesane ("Lesane" or the "defendant") in the above-referenced matter, currently scheduled for July 27, 2021, at 11:00 a.m. The defendant violently trafficked two minor victims who were then 14- and 17-years-old. He used physical force to control them, including by punching and choking one minor victim when she did not want to engage in prostitution for him, and treated these minors as his property. The defendant forced his victims to engage in prostitution so that he could profit from it and, in doing so, he caused them irreversible trauma. Because of the nature of his conduct and the exceptional vulnerability of, and harm caused to his minor victims, the Government submits that a sentence within the stipulated United States Sentencing Guidelines range of 210 to 262 months (the "Stipulated Guidelines Range") is necessary and appropriate.

**A. Background**

  On December 12, 2018, a Grand Jury sitting in the Southern District of New York returned an indictment, S2 18 Cr. 527 (ECF No. 38), charging Sean Merchant, Martique Mcgriff, Reuben Sands, Jermaine Myrie, and Steven Lesane, in seven counts relating to violations of Title 18, United States Code, Sections 1591 and 1594. Specifically, the defendant was charged in Count One with conspiring to traffic women and minor girls for sex, including at least three minor victims who were, at various points, residents of a treatment facility for troubled youth ("Facility-1"), in violation of Title 18, United States Code, Section 1594(c). The defendant was also charged in Count Seven with sex trafficking an adult victim by means of force, threats of force, fraud, coercion, and a combination of such means, in violation of Title 18, United States Code, Sections 1591(a), (b)(1), and 2. On December 16, 2018, the defendant was arrested and presented before the Honorable Debra C. Freeman, United States Magistrate Judge for the Southern District of New York, and ordered detained. He has remained in custody since that time.

On September 16, 2019, the defendant pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"),[1] to one count of trafficking two minor victims, as charged in a superseding information, S7 18 Cr. 527 (KMW) (ECF No. 138 (the "Superseding Information")). The Superseding Information charged the defendant in a single count of conspiring to commit sex trafficking of a then 14 year-old minor victim ("Victim-7")[2] and a then 17 year-old minor victim ("Victim-8"), in violation of Title 18, United States Code, Sections 1591(a), (b)(2), and 2.

The parties stipulated in the Plea Agreement that the applicable guidelines range is 210 to 262 months' imprisonment, with a mandatory minimum sentence of 120 months' imprisonment. In the Final Presentence Report, dated August 26, 2020 ("PSR"), the Probation Office ("Probation") recommends a sentence of 262 months' imprisonment.

**B. Offense Conduct**

As set forth in the PSR, the defendant violently trafficked two minor victims, Victim-7 and Victim-8. Victim-7, who worked for the defendant in or about the summer of 2009, believes she was the defendant's first victim. Victim-7 was roughly 14 years old at the time the defendant began trafficking her. The defendant took Victim-7 to a "track," *i.e.*, a location where it is common to engage in prostitution, in the Bronx every night that she worked for him. He sold her to strangers to make money. Victim-7 estimated that she saw approximately three "customers" each night, and she gave all of the proceeds from engaging in prostitution to the defendant. On occasions when Victim-7 did not want to go to the track, the defendant was violent with Victim-7, including by punching her and choking her (*See* PSR ¶ 17).

The defendant's violent trafficking of minor victims did not end with Victim-7. In or about 2011 through in or about 2012, Lesane trafficked Victim-8. The defendant became more sophisticated in his *modus operandi* with Victim-8, advertising her online for commercial sex and then having Victim-8 perform "in calls," where she met with customers at particular hotels located in the Bronx, as well as "out calls," traveling to meet customers for sex at the defendant's behest. The defendant was violent with Victim-8 as well. While Victim-8 worked for the defendant, he punched her with a closed fist and, on at least one occasion, locked Victim-8 in a room from which she had to break out. (*See* PSR ¶ 19).

The defendant's involvement in sex trafficking continued, and he worked with others to traffic additional victims. The defendant and his co-defendants conspired to traffic multiple minor girls and adult women from approximately January 2016 until approximately June 2018. (PSR ¶ 12). The defendants worked together to further each other's sex trafficking businesses, including

---

[1] One December 12, 2019, the defendant filed a motion to withdraw his guilty plea. (Dkt. 167.) This Court denied that motion on February 11, 2020. (Dkt. 186.) On May 12, 2021, the defendant, who is currently represented by counsel, filed a *pro se* letter renewing his motion to withdraw his plea (the "Letter") and raising many of the same arguments that were previously rejected by this Court. (Dkt. 237.) The Government has filed an opposition to this motion. Defense counsel has not filed a formal motion for reconsideration (or for a *Fatico* hearing) and does not seek that relief in their sentencing submission.

[2] The references to victims in this submission correspond to those in the PSR.

by assisting in posting advertisements online for commercial sex services and sharing locations where they had their victims engage in prostitution for the defendants' benefit. (*Id.*)

## C. Probation's Recommendation

Probation has calculated the defendant's offense level as 35 and criminal history category as V, resulting in an applicable guidelines range of 262 to 327 months' imprisonment.[3] Probation recommends a sentence of 262 months' imprisonment, which is within the Stipulated Guidelines Range. (*Id.* at 29-32.) Probation supports its recommendation with the following assessment of Lesane's conduct:

> During the course of the investigation, we did not identify any factors that would warrant a sentence below the Guidelines range of imprisonment. Lesane's criminal history dates back to 2003, and he received lenient sentences for his prior convictions, which did not serve as a deterrent. Instead, as the instant offense reveals, the defendant's deviant behavior escalated. The gravity of the instant offense is immense, as the defendant's conduct undoubtedly caused substantial physical and emotional harm to the victims. . . . Lesane's conduct clearly shows that he did not view the victims as human beings, but rather, as objects to be used for his own financial benefit.

(*Id.*)

## D. The Defendant's Objections to the PSR and Sentencing Submission

The defendant's submission requests that the Court impose the mandatory minimum term of imprisonment of 10 years, which is a 110-month downward variance from the bottom of the Stipulated Guidelines Range. (Def. Sentencing Mem. ("Def. Mem.") at 1.) The defendant also objects to the PSR's calculation of his criminal history. Specifically, the PSR calculated a criminal history category of V after finding two youthful offender adjudications (one from 2003 and one from 2005), which it assigned an additional six points, as well as finding that the defendant was under a criminal justice sentence and therefore awarded an additional two points. The Government stands by its plea agreement, which stipulated that the defendant's criminal history category was III and that the Stipulated Guidelines Range was 210 to 262 months' imprisonment, with a mandatory term of 120 months' imprisonment.

---

[3] The Plea Agreement calculated that the defendant had four criminal history points, placing him in Criminal History Category III. The PSR calculated a final total of 12 criminal history points, resulting in Criminal History Category V. The difference is attributable to: (i) three juvenile convictions, totaling seven criminal history points, not included in the Plea Agreement (*see* PSR ¶¶ 55, 56, 59); (ii) a 2010 conviction for possession of marijuana in the Court of Common Pleas in Lehigh County, Allentown, Pennsylvania, which counted for one criminal history point (*see* PSR ¶ 66); and two points, pursuant to U.S.S.G. § 4A1.1(d), for committing the current offense while under a criminal justice sentence (*see* PSR ¶ 70). The Government stands by the Stipulated Guidelines Range in the Plea Agreement and, in any event, notes that Probations recommendation of 262 months' incarceration is within the Stipulated Guidelines Range.

The defendant objects to the factual allegation in the PSR that he impregnated Victim-7 and pushed her down a flight of stairs. Although the Government credits Victim-7, a hearing is not necessary here because, even under the defendant's view of the facts, a sentence within the Stipulated Guidelines Range would be appropriate. In light of the extreme violence the defendant used to force Victim-7 to engage in prostitution, including by punching and choking her, whether he also pushed her down the stairs while pregnant with his child is not a necessary finding to reach the conclusion that a sentence within the Stipulated Guidelines Range is appropriate and necessary and warranted here.[4]

Finally, the defendant objects to the numbering of the victims because it "creates an inference that Mr. Lesane's plea relates to eight victims in total." (Def. Mem. at 8-9.) Any "inference," however, is directly contradicted by the PSR, which makes explicit which victims Lesane is responsible for substantively trafficking. (*See* PSR at ¶ 24.) Accordingly, the defendant's suggested numbering change is unnecessary.[5] The Government understands from defendant's submission that the remainder of the defendant's objections have been addressed by Probation in the final PSR.

E. **Applicable Law**

As the Court is aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, Your Honor must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

---

[4] Accordingly, the Government will respectfully request that the Court make clear on the record that even accepting the defendant's view of the facts, in light of the undisputed facts of the PSR, the Court's sentence would not be different.

[5] The defendant notes that, in his Plea Agreement, he stipulated to a two-point enhancement for the use of a computer to facilitate the travel of Victim-2 (who is Victim-8 in the PSR) to engage in prohibited sexual conduct. The defendant states that the discovery "does not include any evidence that Mr. Lesane communicated with Victim-2 referenced in the Information through the use of a computer." (Def. Mem. at 6 n.6.) The defendant, however, agreed to that enhancement in the Plea Agreement. In any event, the Government notes that Victim-8 informed the Government, in substance and in part, that the defendant placed prostitution advertisements for Victim-8 on the websites Backpage and Craigslist, which is the basis for the stipulated two-point enhancement.

**F. Discussion**

The Government respectfully submits that the seriousness of the offense, the need to promote respect for the law, ensure just punishment, protect the public, and afford adequate deterrence, all warrant imposition of a sentence within the Stipulated Guidelines Range of 210 to 262 months' imprisonment.

   *1. Seriousness of the Offense and Respect for the Law, and Just Punishment*

As set forth in the PSR, the defendant violently abused minor women for money. Victim-7, barely a teenager, was forced by the defendant to have sex with strangers, engaged in prostitution three times a day, and then gave the proceeds of those acts to the defendant. When Victim-7 did not want to work on a particular night, the defendant punched and choked her. The defendant also punched Victim-8, and, on at least one occasion, locked Victim-8 in a room from which she had to break out. To say that these crimes are serious does not come close to capturing the pain and suffering that the defendant has caused to these minor victims. To the defendant, these victims had no dignity, no autonomy. They represented to him an avenue for profits, and not human beings. Any sentence within the Stipulated Guidelines Range of 210 to 262 months' imprisonment is a substantial term of imprisonment. But this range of imprisonment appropriately reflects the seriousness of the defendant's crime.

   *2. The Stipulated Guidelines Range Accounts for Lesane's Relative Culpability*

A sentence within the Stipulated Guidelines Range also accounts for the defendant's relative culpability compared to that of his co-defendants. As this Court is aware, all of the defendants in this case have pleaded guilty pursuant to plea agreements with stipulated guidelines ranges. The Government issued these plea offers according to its assessment of the defendants' relative culpability:

- *Reuben Sands*. Sands pleaded guilty to one count of conspiring to violate the Travel Act, which carries a statutory maximum sentence of 60 months' imprisonment. This Court sentenced Sands to 60 months' imprisonment.

- *Jermaine Myrie*. Myrie pleaded guilty to conspiring to sex traffic one minor victim. In his plea agreement, Myrie stipulated that the guidelines range was 135 to 168 months' imprisonment. This Court sentenced Myrie to 135 months' imprisonment.

- *Martique McGriff*. McGriff pleaded guilty to conspiring to sex traffic two victims by force, fraud, or coercion. In his plea agreement, McGriff stipulated that the guidelines range is 168 to 210 months' imprisonment (he has not yet been sentenced).

- *Sean Merchant*. Merchant pleaded guilty to sex trafficking three minor victims. In his plea agreement, Merchant stipulated that the guidelines range is 235 to 293 months' imprisonment with a mandatory minimum sentence of 120 months' imprisonment (he has not yet been sentenced).

In this case, the defendant plead guilty pursuant to a plea agreement with the second highest Stipulated Guidelines Range. That Guidelines Range appropriately reflects his culpability relative to his co-defendants, including the number of victims that he directly trafficked, their ages, and the significant violence that he perpetrated against them.

The Stipulated Guidelines Range also is commensurate with the defendant's culpability relative to defendants in other cases arising from the same investigation. As noted in the PSR, the investigation that led to this prosecution began when the FBI's Child Exploitation and Human Trafficking Force received a tip from a non-profit organization about trafficking of minor victims—many of whom were residing, or had previously resided, at Facility-1. (PSR ¶ 8). Ultimately, the investigation led to the prosecution of 19 individuals for sex trafficking offenses, each of whom has been convicted either by entering into a plea agreement or following trial. In general, the Government extended plea agreements involving pleas to sex trafficking offenses to those, like the defendant, whom it viewed as most culpable. In the category of defendants who have been convicted of sex trafficking offenses, violations of Title 18, United States Code, Sections 1591 or 1594(c), the following defendants have been sentenced:

- Hubert Dupigny received a sentence of 300 months' imprisonment after being convicted at trial. *See United States v. Dupigny,* 18 Cr. 528 (JMF).

- Ruben Morciglio was sentenced to 240 months' imprisonment after pleading guilty to one count of sex trafficking a minor, in violation of Title 18, United States Code, Section 1591(b)(2), and two counts of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c).

- Luidji Benjamin was sentenced to 204 months' imprisonment after being convicted at trial of one count of sex trafficking of a minor, in violation of Title 18, United States Code, Section 1591(b)(2), and one count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), in *United States v. Benjamin*, 18 Cr. 874 (JSR);

- Jabari Kennedy was sentenced to 156 months' imprisonment after pleading guilty to a single count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), in *United States v. Jabari Kennedy, et al.*, 18 Cr. 529 (JFK);

- Jermaine Myrie was sentenced to 135 months' imprisonment after pleading guilty to a single count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), in *United States v. Sean Merchant, et al.*, 18 Cr. 527 (KMW); and

- Lawrence Walsh entered into a cooperation agreement and testified as a Government witness at trial against his co-defendant, Luidji Benjamin. Walsh received a sentence of time-served after serving approximately 19 months' imprisonment. *See United States v. Lawrence Walsh*, 18 Cr. 874 (JSR).

- Hensley Dupigny entered into a cooperation agreement and testified as a Government witness at trial against his co-defendant, Hubert Dupigny. Hensley Dupigny received a sentence of 48 months' imprisonment. *See United States v. Hensley Dupigny,* 18 Cr. 528 (JMF).

Rather than focusing on the nature and circumstances of the offense, a significant portion of the defendant's sentencing submission discusses his family and upbringing. The defendant now has the support of both of his parents, with whom he has maintained a good relationship. The defendant's father was a former United States Marine and retired New York City Police Department officer. The defendant's mother is a security officer in Manhattan. (*See* PSR at ¶ 77-79.) One of Lesane's brothers is employed as a security supervisor and the other is a college student. (*Id.*) As stated in the PSR, the defendant grew up in a "loving home," and had a "close knit" family (although he claims in sentencing submission that his father was largely absent). (*Id.*) The Government agrees with the defendant that his supportive family bodes well for his life after prison. On the other hand, that the defendant had such a supportive upbringing, but nonetheless chose to violently pimp minor girls, makes his crime all the more inexplicable.

The defendant's reliance on other sentences imposed in sex trafficking cases in this District only underscores why a sentence within the Stipulated Guidelines Range is appropriate here. For example, the defendant relies on this Court's imposition of a 114-month-sentence for defendant Dawitt Dykes. *United States v. Almonte*, 16 Cr. 670 (KMW). Dykes's role in the sex trafficking conspiracy in that case was significantly different from the defendant's role in the instant offense. At Dkyes's trial, there was evidence that Dykes served as a bodyguard for a sex trafficking brothel at the behest of a co-conspirator. Specifically, "[Dykes] was paid to watch the girls and make sure they paid a portion of their earnings to Soly Almonte, who ran the brothel." (*Id.*, ECF No. 197 at 4.) Accordingly, Dykes's role in the offense was far less culpable than Maria Soly Almonte, the leader of the sex trafficking conspiracy who received a sentence of 20 years' imprisonment. Soly Almonte was convicted after trial of five counts relating to her management of a sex trafficking operation that victimized multiple minor girls.

The defendant's reliance on various other cases is likewise misplaced. The defendant's comparisons to defendants who have different criminal histories, different offense conduct, and were charged as part of separate cases are not helpful to the Court's analysis because of the highly factual sentencing determinations that must be made for each defendant. The most meaningful comparisons for the Court are to his co-defendants, and to other similarly-situated defendants charged in cases arising from the same investigation. And, as set forth above, a sentence within the Stipulated Guidelines Range appropriately accounts for that comparison.[6]

---

[6] The defendant also argues, generally, that the conditions of confinement at MDC, and especially since the onset of the COVID-19 pandemic, warrant a downward variance. The Government recognizes that the pandemic has in some circumstances made inmates' incarceration "harsher and more punitive than would otherwise have been the case … because the federal prisons . . . have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." *United States v. Rodriguez*, No. 00 Cr. 761 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) (internal quotation marks and citation omitted). The defendant, like other inmates, has been subject to lockdowns in an effort to prevent the spread of COVID-19 within that facility. While certainly worthy of the Court's consideration under Section 3553(a), the Government does not believe that the defendant's conditions of confinement warrant a downward variance.

### 3. The Need to Protect the Public and Deter the Defendant and Other Similarly Situated Individuals

The defendant's extensive criminal history is an aggravating factor that favors a sentence within the Stipulated Guidelines Range. This is not the first time that the defendant has forced victims to engage in prostitution, and it is not the first time that he has used violence. In 2016, for instance, approximately two years before his arrest on this case, the defendant pleaded guilty to possession of a hypodermic instrument after compelling an adult victim to engage in prostitution. (PSR ¶ 69.) As part of that arrest, "[l]aw enforcement officers observed numerous text messages on the victim's phone showing that the defendant would provide the victim with heroin, and the defendant's intention was to keep the victim in an impaired state in order to keep her conducting sexual acts as a scheme to earn more money for Lesane." (*Id.*) Additional text messages showed that Lesane threatened the victim with violence to continue engaging in prostitution for him. The defendant received a lenient sentence of a conditional discharge. (*Id.*)

The defendant's escalating violence also appears to be a disturbing trend in his criminal history. In 2003, the defendant "forcibly" stole property from a victim. (*Id.* ¶ 53.) In 2004, the defendant physically assaulted and robbed a victim for cash. (*Id.* ¶ 57.) During that robbery, "Lesane struck the victim about the head with a closed fist" and "kicked the victim about his body." (*Id.*) In 2016, when he was arrested in connection with his possession of a hypodermic instrument, he fled from law enforcement and resisted their arrest. (*Id.* ¶ 69.) Even while in prison, the defendant has been sanctioned for possessing a hazardous tool, and received 41 days' loss of good conduct time, 45 days' disciplinary segregation, and 365 days' loss of visitation privileges. (*Id.* ¶ 9.) Accordingly, the defendant has shown a disregard for the law and for the safety and wellbeing of others. A substantial sentence is necessary to deter the defendant and to protect the public from any future crimes.

Finally, there also is a compelling need for general deterrence in this case, as the offense involved the victimization of some of the most vulnerable members of society. A substantial sentence of incarceration within the Stipulated Guidelines Range would send a powerful message to others who might seek to victimize minors that such actions will not be taken lightly. A period of incarceration of 210 to 262 months would demonstrate that those who victimize children will be held accountable for the incalculable pain that they impose on their victims.

### G. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 210 to 262 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

                              Respectfully submitted,

                              AUDREY STRAUSS
                              United States Attorney

By:      /s/
                              Mollie Bracewell
                              Elinor Tarlow
                              Jacob Gutwillig
                              Peter J. Davis
                              Assistant United States Attorneys
                              (212) 637-2218/1036/2215/2468